UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL DOCKET** |
| **VERSUS** | **No. 10-154** |
| **TRAVIS MCCABE** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion for new trial based upon newly discovered evidence filed by defendant, Travis McCabe ("McCabe"). The government opposes the motion. On April 21, 2011, the Court held an evidentiary hearing with respect to McCabe's motion. For the following reasons, McCabe's motion is **GRANTED**.

### *BACKGROUND*

#### *The Crimes Charged against McCabe*

This case concerns the shooting and burning of Henry Glover in the immediate aftermath of Hurricane Katrina, the obstruction into a federal investigation of those crimes, and the circumstances surrounding such events. As the jury determined, Henry Glover was shot and killed by defendant, David Warren ("Warren"), on September 2, 2005. At the time of the shooting, Warren was a New Orleans Police Department ("NOPD") officer. Henry Glover's body was burned by Gregory McRae, another NOPD officer, in an effort to obstruct an investigation into the shooting.

The second superseding indictment charged McCabe, also an NOPD officer at the time of the shooting, in counts 8, 10, and 11. McCabe was convicted with respect to all three counts.

1

Count 8 alleged that on or about December 2, 2005, McCabe, in relation to and in contemplation of a matter within the jurisdiction of the FBI, knowingly altered, concealed, covered up, falsified, and made entries in documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction. Specifically, count 8 charged that McCabe authored and submitted a false and misleading official report with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting and burning of Henry Glover.

Count 10 charged that on or about July 16, 2009, McCabe knowingly and willfully made materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) he, in collaboration with Sergeant Purnella Simmons ("Simmons"), wrote and typed the incident report that documented the September 2, 2005 shooting by Warren; (2) he and Simmons interviewed Officer Linda Howard ("Howard") before writing the incident report; and (3) the incident report submitted to the NOPD was true and accurate.  Count 10 further alleged that when McCabe made such statements to the FBI he knew that: (1) he did not write the incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; and (3) the incident report submitted to the NOPD was false and inaccurate.

Count 11 charged that on or about July 31, 2009, McCabe knowingly made a material declaration under oath in a proceeding before a grand jury of the United States.  Specifically, count 11 alleged that McCabe testified falsely that: (1) he, in collaboration with Simmons, wrote the incident report which documented the September 2, 2005 shooting by Warren; (2) he interviewed Howard before writing the report; (3) he did not connect the Warren shooting to the

burned car on the Patterson Road Levee until it appeared in the newspaper; and (4) the incident report submitted to the NOPD was true and accurate. Count 11 further alleged that when McCabe made such statements he knew that: (1) he did not write an incident report in collaboration with Simmons; (2) he did not interview Howard; (3) he had been aware, since 2005 (prior to any media reporting), that the Warren shooting and the burned car on the Patterson Road Levee were connected; and (4) the incident report submitted to the NOPD was false and inaccurate.

### *The Government's Case against McCabe*

At the heart of the government's case against McCabe was a narrative, alleged to be fraudulent, which the government introduced at trial ("narrative portion of government exhibit 34"). As the government has represented to the Court:

> McCabe was charged with substituting his own sanitized, fraudulent version of the two page narrative section of the December 2, 2005 police report concerning David Warren's shooting of Henry Glover for the one prepared by Sergeant Purnella Simmons and submitting it as if it had been written by Simmons. The fraudulent version of the shooting exonerates Warren and omits the primary evidence against him, particularly the inculpatory statements of Warren partner, Linda Howard, as well as the so-called "bloody towel" that undercuts Warren's claim that he did not think he hit anyone when he shot. Additionally, it contains a fictitious review of the incident by Lieuteneant [sic] Robert Italiano and Captain David Kirsch exonerating Warren for the shooting.
>
> In his defense regarding the fraudulent narrative, McCabe falsely claimed that he was merely assisting an incompetent colleague prepare the report. McCabe presented this false story under oath to the Grand Jury. McCabe also presented false information to FBI Special Agent Ashley Johnson, which interfered with the federal investigation of the death and burning of Henry Glover.[1]

---

[1] R. Doc. No. 464, pgs. 3-4.

In other words, the government contended at trial that Simmons authored an original version of the report detailing Henry Glover's shooting and that Simmons' original version of the report accurately detailed such shooting. The government argued that McCabe crafted his own version of the report which omitted information detrimental to Warren. According to the government, McCabe somehow substituted his version of the report for Simmons' version of the report.

At trial, the government was unable to produce the "original" version of the report. Instead, the government produced the narrative portion of government exhibit 34 and relied on Simmons to describe to the jury the information that she had included in the original report.[2] During the trial, Simmons conceded that in 2009 she was in possession of the second page of McCabe's allegedly fraudulent narrative report. However, Simmons could not explain how the second page of such report came into her possession.

*The Newly Discovered Evidence*

On February 7, 2011, McCabe filed a motion for a new trial based upon newly discovered evidence. The motion was supported by the affidavits of Warren and his trial counsel.

In his motion, McCabe asserts that it was only after the trial ended that he was informed that Warren's attorneys were in possession of a copy of a narrative report that Simmons allegedly gave to Warren in December 2005 ("newly discovered narrative report"). Except for three minor differences, the newly discovered narrative report and the narrative portion of

---

[2] Simmons admitted that she handwrote a shorter narrative contained on the "face sheets" attached to the narrative portion of government exhibit 34.

government exhibit 34 are identical in substance.[3]

In his affidavit and at the evidentiary hearing, Warren maintained that Simmons gave him the newly discovered narrative report in December 2005. Warren asserted that he gave such report to his attorneys in May 2009. According to Warren, he did not explicitly bring such report's existence to the attention of his attorneys until late in the trial when it occurred to him that there may have been a minor difference between government exhibit 34 and the report that Simmons gave to him in December 2005.

According to the affidavits of Warren's counsel and their testimony at the evidentiary hearing, although Warren's lawyers briefly questioned Warren with respect to his assertion that he had received a report from Simmons, they did not believe that the alleged existence of such report was germane to Warren's defense. Warren's attorneys did not attempt to locate the report during the trial.

Following the trial, Warren's attorneys did locate the report that Warren alleged he received from Simmons in December 2005. At that time, Warren's counsel notified McCabe's counsel of the existence of the newly discovered narrative report.

*LAW AND ANALYSIS*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion based on newly discovered evidence is to be filed within 3 years after the verdict. Fed.

---

[3] The words "hurriedly start" appear in paragraph 3 of the newly discovered narrative report. In government exhibit 34, "hurriedly started" appears instead of "hurriedly start." The words "Jefferson Parish Dispatcher" appear in the last paragraph of the newly discovered narrative report. In government exhibit 34, "Jefferson Parish Sheriff Office Dispatcher" appears in lieu of "Jefferson Parish Dispatcher." Finally, the word "shoot" is used in the last paragraph of the newly discovered narrative report. In government exhibit 34, the word "shot" appears instead of "shoot." There are other non-substantive differences between the reports such as the color of the paper on which they are printed.

5

R. Crim. P. 33(b).  Motions for a new trial based upon newly discovered evidence are "disfavored and reviewed with great caution."  *United States v. Wall,* 389 F.3d 457, 467 (5th Cir. 2004) (citations omitted).  "Such relief is merited only if, *inter alia,* the evidence is such that it would probably lead to an acquittal, . . . and would create a reasonable doubt that did not otherwise exist."  *United States v. Aponte-Vega*, 230 F.3d 522, 525 (2nd Cir. 2000) (internal quotation marks and citation omitted).

Generally, there are five prerequisites that must be met to justify a new trial based upon newly discovered evidence.   *Wall,* 389 F.3d at 467.  The defendant must prove that:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial;
>
> (2) the failure to detect the evidence was not due to a lack of diligence by the defendant;
>
> (3) the evidence is not merely cumulative or impeaching;
>
> (4) the evidence is material; and
>
> (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id*.  In the absence of any one of the elements, the motion fails.  *Id*.  The Court will in turn address each element.

### *The Evidence is Newly Discovered*

With respect to the limited issue of whether or not Simmons provided Warren with a copy of the report in December 2005, the Court finds that Warren testified credibly during the evidentiary hearing.  Although Warren knew of the existence of the report, the Court finds credible Warren's testimony that he failed to notify anyone of the existence of the report until close to the end of trial.  The government correctly points to the fact that the Court, itself, found

6

Warren not to be credible with respect to his involvement in the killing of Henry Glover. However, the discovery of the critical piece of evidence at issue herein emanates from an off-hand remark made by Warren during the trial. The Court does not lend credence to the assertion that Warren's observation was a calculated maneuver to assist McCabe with his defense.

The Court further concludes that the version of the report brought to light by Warren is newly discovered and that it was unknown to either McCabe, McCabe's lawyers, or the government at the time of trial. While Warren's lawyers were in possession of the newly discovered narrative report, Warren's lawyers were consumed with defending Warren. They owed McCabe no duty to communicate the significance of the newly discovered narrative report to his defense. Furthermore, it is clear that Michael Ellis, Esq., who represented Warren, received the report from Warren and, without assigning the report significance with respect to Warren's defense, placed the report in a file many months before trial. Accordingly, the failure of Warren's counsel to notify McCabe and his counsel of the existence of the newly discovered narrative report does not impact the Court's determination that the report is newly discovered as to McCabe.

With respect to the limited issue of whether McCabe knew that Warren was in possession of the newly discovered narrative report, the Court finds that McCabe testified credibly with respect to this issue during the evidentiary hearing. This determination is buttressed by common sense. If McCabe had known about the newly discovered narrative report before or during trial, he would have used it at trial in order to undermine the government's case against him. Knowing that the newly discovered narrative report existed, no reasonable person would wait until after conviction to bring such report to the Court's attention. It simply would have made no

sense for McCabe and his counsel to sit on the newly discovered narrative report throughout the trial in the hope that such report would secure a new trial in the event McCabe was convicted.[4] This is especially so given the high bar that a convicted criminal defendant must hurdle in order to secure a new trial based upon newly discovered evidence.[5]

### *The Failure to Discover the Evidence was Not Because of a Lack of Due Diligence*

As discussed above, there is no credible indication whatsoever that McCabe or his counsel knew before or during the trial that the newly discovered narrative report existed.[6] Although the government argues that McCabe has failed to demonstrate that he acted with due diligence with respect to the newly discovered narrative report because McCabe did not ask Warren to produce any documents before trial, the government cites no authority for this proposition. While McCabe's counsel have not represented to the Court that they sought documents from Warren, the Court has not been presented with any persuasive evidence or argument that McCabe's counsel had reason to request such.

The Court notes that McCabe's counsel did attempt to interview Simmons before trial, but they never received a response from Simmons' lawyer. Such efforts are indicative of the fact

---

[4] The Court also notes that McCabe's initial motion for a new trial, which was denied, did not mention the newly discovered evidence. It was only after the Court's denial that such evidence was brought to this Court's attention, further supporting the Court's conclusion that McCabe and his counsel were unaware of such evidence.

[5] During the evidentiary hearing, McCabe stated that he authored the newly discovered narrative report including the typographical errors discussed in footnote 3 supra. In light of such statement, the government submitted a supplemental brief to the Court in which it argues that the newly discovered narrative report is not newly discovered as to McCabe. The Court rejects the government's argument as it ignores the fact that the newly discovered narrative report and the narrative portion of government exhibit 34 are identical in substance with the exception of the typographical errors already discussed. It is unreasonable to think that any person would recall such minor distinctions between documents almost five years after the documents were prepared.

[6] While Warren might possibly argue that his counsel should have made further inquiry into the substance of the report (because the newly discovered narrative report corroborates Warren's account of the shooting), the fact remains that McCabe's counsel was never made aware of the newly discovered narrative report's existence.

8

that McCabe's counsel exercised due diligence when they attempted to acquire information relative to McCabe's defense from Simmons.[7] Furthermore, the Court also had the opportunity to observe McCabe's counsel throughout the months prior to trial and during the four-week trial. They left no stone unturned in defense of their client.

### *The Evidence is Material*

The facts underlying each of the counts against McCabe are fundamentally intertwined with the existence of the newly discovered narrative report. Indeed, the government has acknowledged that, "the issue of whether the narrative was Simmons' work product was one of the most hotly contested and pivotal issues in the trial."[8] As such, evidence that Simmons' gave Warren a copy of the narrative report that is substantively indistinguishable from the narrative portion of government exhibit 34 would have been material evidence that the narrative report introduced at trial was, in fact, Simmons' work product.

### *The Evidence is Neither Cumulative nor Merely Impeaching*

First, the newly discovered narrative report is not cumulative because it provides proof of a critical issue – the non-existence of a different version of the narrative report – in a manner not addressed at trial. No evidence was adduced at trial to directly contradict Simmons' assertion that she had authored an "original report" that was substantively different from the narrative portion of government exhibit 34. Further, the government was unable to produce Simmons' "original" version of the report that McCabe allegedly falsified.

---

[7] Even if the Court accepted the argument that Simmons would have denied providing the report to Warren, the fact remains that as to the due diligence prong of the new trial based upon newly discovered evidence test, McCabe's counsel did attempt to obtain information from Simmons.

[8] R. Doc. No. 486, pg. 4. Given such assertions on the government's part, the Court does not credit the government's attempt to minimize the import of the newly discovered narrative report in other portions of its brief. *See, e.g.*, *Id.* at 7 ("In all likelihood, the 'newly discovered' evidence would have been a footnote, at best, had it been introduced at trial.").

Second, although the newly discovered narrative report may have impeachment value with respect to Simmons, any such impeachment value does not diminish in any way the fact that it has independent evidentiary value. If the jury had been presented with evidence that Simmons gave Warren a copy of the narrative report in December 2005 that is substantively identical to the report that the government claims McCabe fabricated, the jury could have certainly concluded that McCabe never authored a "second, fraudulent" report. Simmons' assertion that two reports existed – her original report and the "second, fraudulent" report – would have been directly contradicted. This conclusion results regardless of whether or not the newly discovered narrative report is used to impeach Simmons. *See United States v. Giraldi*, 137 F.3d 139, at *3 (5th Cir. Feb. 4, 1998) (unpublished) ("Evidence that does not directly contradict the testimony of a witness and is only relevant to the credibility of the witness is merely impeaching.") (citing *United States v. Time*, 21 F.3d 635, 642 (5th Cir. 1994)).

### *The Evidence Would Probably Produce an Acquittal*

With respect to adjudicating a motion for new trial based upon newly discovered evidence, the United States Court of Appeals for the Eighth Circuit has noted that, "[i]t is the job of the district court, either on affidavits or after an evidentiary hearing . . . to decide whether the newly discovered evidence is credible . . . and, if so, whether it would probably produce an acquittal if a new trial were held." *United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997); *see also United States v. Lighty*, 616 F.3d 321, 374 (4th Cir. 2010).

Explaining the standard for determining whether credible evidence will probably produce an acquittal, the United States Court of Appeals for the Third Circuit has stated:

> Having established that a district court is required to make a credibility determination as part of its probability-of-acquittal inquiry,

10

> we next address the proper standard for making such a determination. [The defendant] suggests that a district court's focus should be on whether a jury probably would reach a different result upon hearing the new evidence. We agree. As the Eighth Circuit stated in *United States v. Grey Bear,* "[t]he real question we suppose, is not whether the district judge believed [the proffered testimony], but how likely the district judge thought a jury at a second trial would be to believe it." 116 F.3d at 350. To make a determination under this standard, the district court cannot view the proffered testimony in a vacuum; it must weigh the testimony against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial. *See United States v. Woolfolk,* 197 F.3d 900 (7th Cir. 1999) ("The judge[,] in determining credibility, . . . must look to all aspects of the witness including not only her testimony but the evidence presented at trial.").

*United States v. Kelly*, 539 F.3d 172, 189 (3rd Cir. 2008) (some brackets added; footnote omitted).

As both defense counsel and the government conceded during oral argument, the resolution of this motion primarily turns on whether Warren received the newly discovered narrative report from Simmons. At the evidentiary hearing, Warren testified that he received the report in early December 2005 from Simmons. Warren testified that Simmons gave him the report early in the morning at the NOPD's fourth district headquarters. He admitted that he and Simmons were the only people in the room when she allegedly gave him the report. As such, no witness can corroborate Warren's account. Further, Warren acknowledged that he told no one about receiving the report from Simmons until he told his lawyers about it toward the end of the November 2010 trial.

Simmons testified at the evidentiary hearing that she did not give Warren a copy of the newly discovered narrative report. During trial, Simmons testified that she did not author the narrative portion of government exhibit 34. Simmons testified at the evidentiary hearing that she

11

also did not author the newly discovered narrative report.

The Court is faced with a difficult credibility determination. On one hand, Warren is a convicted felon. On the other hand, Simmons admitted to testifying falsely under oath before the federal grand jury. Nevertheless, the Court finds, as previously stated, that Warren's testimony that he received the newly discovered narrative report from Simmons in December 2005 is sufficiently credible and the first step of *Grey Bear* is satisfied.

In its brief and at the evidentiary hearing, the government asserted that it believes that the newly discovered narrative report is simply an earlier draft of McCabe's fraudulent report that McCabe gave to Warren. (The government provided no evidence tending to prove such.) Assuming the government's theory is correct, i.e., that McCabe authored the newly discovered narrative report and that Warren is willing to lie on McCabe's behalf, the Court finds it exceedingly difficult to believe that McCabe and Warren would have waited until now to bring the newly discovered narrative report to light and assert their fabricated story. As stated previously, why not bring it up during the trial? Why not bring it up in connection with the first motion for a new trial? Additionally, assuming that Warren did not receive the newly discovered narrative report from either McCabe or Simmons, what sense does it make for Warren to fortuitously assert that he received the report from Simmons? The only person it helps is McCabe; there is no benefit to Warren.

The Court also notes that McCabe did not become aware of the fact that the government had focused its investigation on him until, at the earliest, his July 16, 2009 interview with an FBI agent and a government prosecutor at the Whole Foods Store in New Orleans. When Warren delivered the newly discovered narrative report to his attorney in May 2009, Warren could not

12

have known that the contents of the newly discovered narrative report and the fact that Warren received it from Simmons would have been critical to the government's case against McCabe.

The Court's determination that the newly discovered evidence is credible is further supported by the fact that Simmons' credibility at trial was a significant jury issue.  This is not a case where there was a plethora of evidence supporting Simmons' claims.  To the contrary, in the Court's estimation, the government's case presented against McCabe at trial was a close one.

The Court also notes that Simmons did not state during her trial testimony that one of the differences between her report and the narrative portion of government exhibit 34 is that her report had a border around it.   The fact that Simmons' original report allegedly had a border was a critical fact stated in her affidavit in connection with the government's response to McCabe's motion for a new trial based upon newly discovered evidence.  The absence of any mention of such a difference at trial also calls Simmons' testimony into question.

At the end of the day, the Court must determine whether the newly discovered evidence "would probably lead to an acquittal, . . .  and would create a reasonable doubt that did not otherwise exist."  *United States v. Aponte-Vega*, 230 F.3d 522, 525 (2nd Cir. 2000) (internal quotation marks and citation omitted).  The Court concludes that the newly discovered narrative report and the testimony relating to it, if presented to a jury, would probably produce a jury acquittal with respect to all of the charges against McCabe.  As previously mentioned, Simmons acknowledged at trial that she was in possession of the second page of that version of the report alleged to be false and that she was unable to explain how she came into possession of such.  There is now credible evidence that Simmons provided a report that is substantively indistinguishable from the narrative portion of government exhibit 34 to Warren in December

13

2005. As such, the existence of the newly discovered narrative report would radically alter the landscape of the government's case against McCabe.

With respect to the obstruction charge,[9] which is premised on the government's theory that McCabe substituted a fraudulent report in an attempt to obstruct justice, such theory is significantly undercut by the newly discovered narrative report. The newly discovered narrative report indicates that, in substantive terms, only one report was ever produced.

Finally, the false statement[10] and perjury[11] charges against McCabe pertain to statements that he allegedly made relative to the accuracy of the report, the preparation of the report, and whether he knew of a connection between the shooting and the burned vehicle at the time the report was written.[12] Were the jury to conclude that there never were two substantively different versions of the narrative report[13] and that the version of events given by Simmons regarding the preparation of the report was false, a jury would probably resolve, in McCabe's favor, the conflicting testimony about whether he assisted Simmons in preparing the report, whether he interviewed Howard, whether he believed the report was true and accurate, and when he learned of the connection between the shooting and the burning of the vehicle.[14]

---

[9] Count 8 of the second superseding indictment.

[10] Count 10 of the second superseding indictment.

[11] Count 11 of the second superseding indictment.

[12] Whether McCabe did or did not connect the Warren shooting to the burned car on the Patterson Road Levee until it appeared in the newspaper pertains only to the perjury count. Otherwise, the false statements alleged against McCabe in count 10 and the false material declarations alleged against McCabe in count 11 are the same.

[13] To the extent that there are minor discrepancies between the narrative portion of government exhibit 34 and the newly discovered narrative report, the jury can evaluate the sources of such discrepancies at trial.

[14] Additionally, with respect to the false statement and perjury counts, the Court has no way of knowing which of the alleged false statements and false material declarations served as a basis for the jury's conviction. The jury did not render any special findings.

Government exhibit 34 was of singular importance to the government's case against McCabe[15]; the newly discovered evidence casts grave doubt on the criminal conviction that the government secured against him.  The Court finds that had the jury been presented with the newly discovered narrative report which is substantively indistinguishable from the narrative portion of government exhibit 34, it is probable that the jury would have had a reasonable doubt as to the crimes alleged against McCabe and that it would have acquitted him.  Nevertheless, the Court notes that this conclusion is based upon the Court's own credibility determinations with respect to the witnesses who testified at the evidentiary hearing.  In the event that another jury faced with this new evidence finds Warren and McCabe not to be credible and once again convicts McCabe, the Court will then sentence McCabe on the basis of that conviction.

## CONCLUSION

The interest of justice requires granting McCabe a new trial.  In doing so, the Court notes that it is no way second guessing the verdict reached by a conscientious and deliberative jury.  Indeed, on December 21, 2010, before the newly discovered narrative report was uncovered, McCabe filed a motion for acquittal or for a new trial in which he argued that the evidence presented at trial was insufficient for the jury to have convicted him.  Respecting the jury's verdict and refusing to Monday morning quarterback the jury's evaluation of the evidence presented during the trial, the Court summarily denied McCabe's motion.  However, because the newly discovered narrative report was not presented to the Court until almost two months after the jury concluded its deliberations, the jury was not given any opportunity to evaluate this critical new evidence relative to all of the charges against McCabe.  As this Court instructed the

---

[15] At the evidentiary hearing, the government stated that government exhibit 34 was mentioned over 700 times during the trial.

15

jury prior to its deliberations, there are no winners or losers here.  Only justice prevails.

Accordingly, **IT IS ORDERED** that McCabe's motion for a new trial based upon newly discovered evidence is **GRANTED** and that McCabe's convictions with respect to counts 8, 10, and 11 of the second superseding indictment are **VACATED**.  The Court shall hold a scheduling conference at which time new pretrial and trial dates shall be set.

New Orleans, Louisiana, May ___4th___, 2011.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**